129 Cal.Rptr.2d 393 (2003)
105 Cal.App.4th 326
DISCOVER BANK, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent; Christopher Boehr, Real Party in Interest.
No. B161305.
Court of Appeal, Second District, Division One.
January 14, 2003.
Review Granted April 9, 2003.
*394 Kirkland & Ellis, Jeffrey S. Davidson, Rich Richmond, C. Robert Boldt, Los Angeles, and Amy M. Wilkins for Petitioner.
No appearance for Respondent.
Strange & Carpenter, Brian R. Strange and Gretchen Carpenter; Law Offices of Barry L. Kramer and Barry L. Kramer, Los Angeles, for Real Party in Interest.
*395 ORTEGA, J.
According to Blue Cross of California v. Superior Court (1998) 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779 (Blue Cross), where an arbitration agreement governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) is silent with regard to classwide arbitration, section 4[1] of the FAA does not bar state courts from ordering classwide arbitration where permitted by California law. (Blue Cross, supra, 67 Cal. App.4th at pp. 62-63, 78 Cal.Rptr.2d 779.) Blue Cross also found that permitting the plaintiff to proceed with class certification efforts in such instances would not violate section 2[2] of the FAA: "In the absence of an express agreement not to proceed to arbitration on a classwide basis, ordering the parties to arbitrate class claims as authorized by state law does not conflict with their contractual arrangement." (Id. at p. 64, 78 Cal.Rptr.2d 779.)
The present case concerns a Discover Bank cardholder agreement that also contains an arbitration clause governed by the FAA. Unlike the arbitration agreement in Blue Cross, however, the agreement herein expressly prohibits arbitration on a classwide basis (the prohibition will sometimes be referred to herein as a "class action waiver"). Although section 2 of the FAA mandates the enforcement of arbitration agreements that fall within the scope of the act and preempts a state court's ability to invalidate on state substantive law grounds the express terms of a validly formed arbitration agreement,[3] the lower court struck the class action waiver as substantively unconscionable and invalid under California law. (See Szetela v. Discover Bank (2002) 97 Cal.App.4th 1094,118 Cal.Rptr.2d 862 (Szetela), in which the identical class action waiver in the same Discover Bank cardholder agreement was declared unconscionable and invalid under California law.) Having invalidated the class action waiver, the lower court granted Discover Bank's motion to compel arbitration, but permitted the plaintiff to attempt to certify a class for arbitration. (See Keating v. Superior Court (1982) 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (Keating), disapproved on other grounds sub nom. Southland Corp. v. Keating (1984) 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (Southland).)[4]
*396 In this proceeding, Discover Bank, seeking relief from the order striking the class action waiver, has petitioned for extraordinary writ relief on the ground that the FAA precludes states from forcing parties to arbitrate in a manner contrary to their agreement. (9 U.S.C. § 2.) Apart from the question of whether the FAA preempts a state court's ability to strike a class action waiver on substantive state law grounds, the validity of the arbitration agreement as a whole is not otherwise at issue in this proceeding. We hold that where a valid arbitration agreement governed by the FAA prohibits classwide arbitration, section 2 of the FAA preempts a state court from applying state substantive law to strike the class action waiver from the agreement. Accordingly, we disagree with the Szetela decision and grant Discover Bank's petition.

BACKGROUND
Plaintiff Christopher Boehr obtained a credit card from defendant Discover Bank in April 1986. The Discover Bank cardholder agreement ("agreement") governing plaintiffs credit card account contained a choice of law clause providing for the application of Delaware and federal law.

A. Addition of the Arbitration Clause to the Agreement

When plaintiffs credit card was issued, the agreement did not contain an arbitration clause. Discover Bank subsequently added the arbitration clause in July 1999, pursuant to a change of terms provision in the agreement.[5] Relying on the change of terms provision, Discover Bank added the arbitration clause by sending to its existing cardmembers (including plaintiff) a notice that stated in relevant part: "NOTICE OF AMENDMENT . . .. WE ARE ADDING A NEW ARBITRATION SECTION WHICH PROVIDES THAT IN THE EVENT YOU OR WE ELECT TO RESOLVE ANY CLAIM OR DISPUTE BETWEEN U.S. BY ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. THIS ARBITRATION SECTION WILL NOT APPLY TO LAWSUITS FILED BEFORE THE EFFECTIVE DATE."
*397 In addition, the arbitration clause precluded both sides from participating in classwide arbitration, consolidating claims, or arbitrating claims as a representative or in a private attorney general capacity: ". . . NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY."
The arbitration agreement also stated that the FAA would govern the agreement: "Your Account involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act (FAA)." "The arbitrator shall follow applicable substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law."
Existing cardholders were notified that if they did not wish to accept the new arbitration clause, they must notify Discover Bank of their objection and cease using their account. Their continued use of the account would be deemed to constitute acceptance of the new terms. Plaintiff did not notify Discover Bank of his objection to the arbitration clause or cease using his account before the stated deadline.

B. Plaintiffs Putative Class Action Complaint

On August 15, 2001, plaintiff filed a putative class action complaint in superior court against Discover Bank alleging breach of contract and violation of the Delaware Consumer Fraud Act (6 Del. Code, § 2511 et seq.). The complaint alleged that both causes of action arose under Delaware law.
Allegedly, Discover Bank breached its cardholder agreement by imposing a late fee of approximately $29 on payments that were received on the payment due date, but after Discover Bank's undisclosed 1 p.m. "cut-off time." Discover Bank also allegedly imposed a periodic finance charge (thereby disallowing a grace period) on new purchases when payments were received on the payment due date, but after 1 p.m.

C. Discover Bank's Motion to Compel Arbitration

Discover Bank moved to compel arbitration of plaintiffs claim on an individual basis and to dismiss the class action pursuant to the arbitration agreement's class action waiver.
Plaintiff opposed the motion, contending the unilateral addition of the arbitration clause was unconscionable under California law (Badie v. Bank of America (1998) 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273) (Bank of America ).[6] In addition, plaintiff *398 contended the class action waiver was unconscionable and unenforceable under California law. Discover Bank, on the other hand, argued that Delaware law permits the unilateral addition of arbitration clauses to cardholder agreements (5 Del.Code § 952), and the FAA requires the enforcement of the express provisions of an arbitration clause, including class action waivers. Discover Bank contended that under section 2 of the FAA, arbitration agreements should not be singled out for suspect status under state laws applicable only to arbitration provisions.[7]
Plaintiffs counsel conceded below that if the trial court applied Delaware law to the agreement, the unilateral addition of the arbitration clause would be valid under Delaware law. (5 Del.Code § 952, subd. (a).) After the parties presented additional briefing on the applicability of Delaware law (particularly whether the Delaware statute allowing the unilateral addition of the arbitration clause was retroactively applicable to the agreement in this case), the trial court concluded that Delaware law governed the agreement.
The trial court initially granted Discover Bank's motion in its entirety under Delaware law. The trial court found no fundamental California public policy requiring it to reject the parties' selection of Delaware law, under which the unilateral addition of the arbitration clause was conceded to be valid. The trial court stated in part: "Moreover, I don't find in [Bank of America] an articulation of a public policy against using a clause allowing a unilateral right to amend as a way of adding an arbitration clause. [¶] California law and Delaware law may differ in their analysis of contract formation principles regarding unilateral amendment of contracts, but that does not mean that Delaware's contract formation principles offend fundamental California policy."
The trial court also found no California public policy reason to invalidate the class action waiver, which was alleged to be a *399 valid waiver under Delaware law. (See Johnson v. West Suburban Bank (3d Cir. 2000) 225 F.3d 366 (Johnson), which Discover Bank cites in support of its position that Delaware law permits class action waivers.)[8] The lower court noted the availability of small claims court actions to resolve disputes involving minor sums, and also the availability of the California Unfair Practice Act (Bus. & Prof.Code, § 17200) for injunctive relief. The trial court found no fundamental policy in California to supplant federal and Delaware law permitting contractual waivers of class actions.[9]

D. Plaintiffs Motion for Reconsideration

After Discover Bank's motion to compel arbitration was granted, the Fourth District Court of Appeal decided Szetela, supra, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862, on April 22, 2002. Plaintiff, citing Szetela, moved for reconsideration of that portion of the order enforcing the class action waiver. Plaintiff contended Szetela *400 had articulated California public policy reasons to reject (purported) Delaware law permitting class action waivers.
The lower court found Szetela constituted new and controlling authority for the proposition that under California law, an arbitration class action waiver is unconscionable and, thus, unenforceable. The lower court stated in part, "We now know after Szetela, which is binding on this Court, that the result under California law is different from the result under Delaware law. That is, that California law finds unconscionable and unenforceable a contract provision by which a consumer waives the right to bring a class action."
The trial court conducted a choice of law analysis and concluded that enforcing the class action waiver under Delaware law would violate a fundamental public policy under California law as articulated in Szetela. Upon determining it would be proper to sever the class action: waiver clause from the rest of the arbitration agreement, the trial court struck the class action waiver clause from the agreement, ordered plaintiff to arbitrate his claims individually, and left open the possibility that plaintiff may succeed in certifying an arbitration class under California law.
The written order granting plaintiffs motion for reconsideration states in part: "Upon reconsideration, this Court's March 7, 2002[,] order compelling plaintiff Christopher Boehr to arbitrate his claims is hereby vacated insofar as it precludes arbitration on behalf of a potential class. [¶] . . . Based on the law set forth in the Szetela case, and based on Civil Code section 1670.5(a), the portion of Discover's arbitration clause which purports to preclude classwide relief is hereby stricken as unconscionable and against public policy. [¶] . . . Notwithstanding the foregoing, this Court's March 7, 2002[,] order compelling plaintiff to arbitrate his claims is not vacated. Plaintiffs individual claims must be arbitrated and plaintiff may seek to certify an arbitration class."

E. This Writ Proceeding

After the lower court granted plaintiffs motion for reconsideration, Discover Bank filed the present writ petition. Discover Bank seeks reinstatement of the lower court's original order enforcing the arbitration clause in its entirety by compelling plaintiff to arbitrate on an individual basis and precluding him from participating in class litigation or class arbitration. We issued an order to show cause and set the matter for hearing.

DISCUSSION[10]

A. The Federal Arbitration Act

The FAA "was enacted in 1925 (43 Stat. 883) and codified in 1947. (61 Stat. *401 669.) It provides in section 2 that a written arbitration provision in a contract `evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C.A. § 2, italics added.) . . . [¶] The purpose of the act 'was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts.' [Citations.]" (Blue Cross, supra, 67 Cal.App.4th at p. 48, 78 Cal.Rptr.2d 779.)
"There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University (1989) 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (Volt).) The FAA's "primary purpose [is to] ensure] that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate . . ., so too may they specify by contract the rules under which that arbitration will be conducted." (Id. at p. 479,109 S.Ct. 1248.)
"[S]ection 2 of the act places arbitration agreements on an equal footing with contracts generally. [Citations.] In view of that purpose, the Supreme Court has held: `Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. [Citations.]' (Doctor's Associates, Inc. v. Casarotto [ (1996) ] 517 U.S. [681,] 687, [116 S.Ct. 1652, 134 L.Ed.2d 902].) However, a state law that invalidates the express terms of an arbitration agreement is preempted by the act." (Blue Cross, supra, 67 Cal.App.4th at p. 51, 78 Cal.Rptr.2d 779.)

B. A Valid Arbitration Agreement Was Formed

The cardholder agreement in effect when plaintiff opened his credit card account did not contain an arbitration clause. Discover Bank subsequently added the arbitration clause by unilateral amendment, as permitted by the agreement's change of terms clause and Delaware law. Under Delaware law, Discover Bank's unilateral addition of the arbitration clause resulted in the formation of a valid arbitration agreement: "Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to . . . arbitration or other alternative dispute resolution mechanisms. . .." (5 Del.Code § 952, subd. (a).)
In its motion to compel arbitration, Discover Bank urged the trial court *402 to apply Delaware law, as designated in the agreement's choice of law clause,[11] to uphold the formation of a valid arbitration agreement. Plaintiff, on the other hand, contended that upholding the formation of an arbitration agreement under Delaware law would conflict with California's fundamental public policy as expressed in Bank of America, supra, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273.
Finding no California fundamental public policy to preclude the application of Delaware law, the trial court concluded a valid arbitration agreement had been formed. In the present proceeding, Discover Bank contends the issue of whether a valid arbitration agreement was formed is not before us. Discover Bank has petitioned for review of the order granting plaintiffs motion for reconsideration of the class action waiver issue. Whether a valid arbitration agreement had been formed was not at issue in plaintiffs motion for reconsideration. By limiting the motion for reconsideration to the class action waiver issue, Discover Bank contends plaintiff is precluded from "reviving] the issue of whether the arbitration clause was validly added to the Cardmember Agreement."
In his opposition to the writ petition, plaintiff has denied that a valid arbitration agreement was formed, stating that he "admits that Discover purported to add an arbitration clause to the Cardmember Agreement, but denies that such amendment was valid and enforceable."
According to rule 28(e)(2) of the California Rules of Court, "[o]nly the issues set forth in the petition and answer or fairly included in them need be considered by the court." Given that plaintiff in his answer has denied that a valid arbitration agreement was formed, technically the issue is before us. In the discussion portion of plaintiffs brief, however, he failed to supply any arguments or authority to support his claim that no arbitration agreement was formed. Instead, plaintiffs brief focused exclusively on the question of whether the class action waiver was properly stricken from the agreement under California law. The two issues are not the same: whether a valid arbitration agreement was formed under Delaware law requires a choice of law analysis, whereas deciding whether the class action waiver was properly stricken from the agreement requires a federal preemption analysis.
*403 "As stated in People v. Ham (1970) 7 Cal.App.3d 768, 783, [86 Cal.Rptr. 906]: 'Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.'" (People v. Dougherty (1982) 138 Cal.App.3d 278, 282-283, 188 Cal.Rptr. 123.) Given plaintiffs failure to provide argument or authority to support the position that no arbitration agreement was formed, we need not discuss the issue. We therefore assume that a valid arbitration agreement was formed.

C. Federal Preemption of California Law

Finding Szetela had articulated fundamental public policy reasons not to enforce the parties' choice of law clause, the trial court refused to enforce the class action waiver under Delaware law, finding Delaware law to be contrary to this state's fundamental policy of prohibiting class action waivers as expressed in Szetela. As we shall explain, however, where there is a valid arbitration agreement governed by the FAA, California's public policy regarding class action waivers has been preempted by section 2 of the FAA.

1. California Policy on Class Action Waivers

In America Online, Inc. v. Superior Court (2001) 90 Cal.App.4th 1, 108 Cal. Rptr.2d 699 (AOL), the plaintiff filed a putative consumer class action lawsuit under the California Consumer Legal Remedies Act (CLRA) (Civ.Code, § 1750 et seq.) against America Online, Inc. (AOL), in California. The CLRA specifically provides for the prosecution of class actions. (Civ.Code, §§ 1752, 1781.) The CLRA also voids any purported waiver of rights under the CLRA as being contrary to California public policy. (Civ.Code, § 1751.)
AOL moved to stay or dismiss the class action suit, seeking to enforce the forum selection and choice of law clauses in its agreements with the putative class members. The contracts provided for litigation in Virginia and for Virginia law to govern any dispute arising out of the contractual relationship.
Virginia, however, apparently does not allow consumer lawsuits to be brought as class actions. (AOL, supra, 90 Cal. App.4th at p. 5, 108 Cal.Rptr.2d 699.) The AOL court refused to enforce the Virginia forum selection and choice of law clauses, stating that to do so would violate California public policy by necessitating waivers of the CLRA's statutory remedies, right to bring a class action, and antiwaiver provision. (Id. at p. 15, 108 Cal.Rptr.2d 699.) The court also noted that "Virginia's law provides significantly less consumer protection to its citizens than California law provides for our own." (Ibid.)
Regarding the absence of any provision in the Virginia Consumer Protection Act of 1977 (Va.Code Ann., § 59.1-196) for class action relief, the AOL court stated that California has an important interest in making class action relief available to consumers: "In contrast to Virginia consumer law's ostensible hostility to class actions, the right to seek class action relief in consumer cases has been extolled by California courts. . .. [¶] That this view has endured over the last 30 years is of little surprise given the importance class action consumer litigation has come to play in this state. In light of that history, we cannot accept AOL's assertion that the elimination of class actions for consumer remedies if the forum selection clause is enforced is a matter of insubstantial moment. The unavailability of class action relief in this context is sufficient in and by *404 itself to preclude enforcement of the TOS [terms of service] forum selection clause." (AOL, supra, 90 Cal.App.4th at pp. 17-18, 108 Cal.Rptr.2d 699, fns. omitted.)
Although choice of law and forum selection clauses may be invalidated under California law as shown in AOL, there is no blanket prohibition against class action waiver clauses. In Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (Washington Mutual Bank), the California Supreme Court rejected the "suggestion that California businesses dealing with mass groups of consumers should not be permitted to rely on choice-of-law clauses as a means of avoiding involvement in a nationwide class action. The point is not well taken. `Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the endsto sacrifice the goal for the going.' (City of San Jose v. Superior Court [1974] 12 Cal.3d [447,] 462, [115 Cal.Rptr. 797, 525 P.2d 701], fn. omitted. .;.) Consequently, an otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a multistate or nationwide class action or result in the exclusion of nonresident consumers from a California-based class action. [¶] Of course, choice-of-law agreements have no effect in a class action if the trial court determines that they are unenforceable or that class claims fall outside their scope. Nonetheless, if the class action opponent continues to invoke the application of foreign law to the claims of out-of-state class members, the trial court remains obligated to analyze the governmental interests of the various jurisdictions involved to determine whose law is more properly applied." (Id. at pp. 918-919, 103 Cal.Rptr.2d 320, 15 P.3d 1071.)

2. Federal Preemption of State Policy

Neither AOL nor Washington Mutual Bank involved an arbitration agreement or the FAA. Where, as here, an arbitration agreement is governed by the FAA, we must engage in federal preemption analysis to determine whether state policy must bow to the federal act.
In Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902, a franchise holder (Casarotto) filed suit in Montana state court against the national franchisor of Subway sandwich shops. The franchise agreement contained an arbitration clause governed by the FAA, which the franchisor sought to enforce. The Montana Supreme Court held the arbitration clause was unenforceable, due to a violation of a Montana statute requiring that notice of arbitration clauses be typed in underlined capital letters on the first page of the contract. The United States Supreme Court reversed, holding that the Montana statute was preempted by section 2 of the FAA.
Casarotto discussed Volt, supra, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488, which upheld an arbitration agreement governed by the FAA. The agreement in Volt incorporated a state procedural rule permitting the stay of arbitration pending the resolution of a related judicial proceeding. Volt held that enforcing the agreement's adoption of the state procedural rule would not conflict with the FAA, because the purpose of the FAA was to ensure that private arbitration agreements are enforced according to their terms. (Id. at p. 688,109 S.Ct. 1248.)
Casarotto distinguished Volt and concluded that applying Montana's arbitration notice statute would conflict with the purpose of the FAA because the Montana statute would invalidate, rather than enforce, the parties' arbitration agreement. *405 Under section 2 of the FAA, arbitration agreements may not be invalidated for reasons other than those applicable to all contracts: "The `goals and policies' of the FAA, this Court's precedent indicates, are antithetical to threshold limitations placed specifically and solely on arbitration provisions. Section 2 `mandate[s] the enforcement of arbitration agreements,' Southland, 465 U.S. at 10, [104 S.Ct. 852], `save upon such grounds as exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2. Section 27-5-114(4) of Montana's law places arbitration agreements in a class apart from `any contract,' and singularly limits their validity. The State's prescription is thus inconsistent with, and is therefore preempted by, the federal law." (Casarotto, supra, 517 U.S. at p. 688,116 S.Ct. 1652.)
In Southland, supra, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1, the Supreme Court held that California's Franchise Investment Law (Corp.Code, § 31000 et seq.) (FIL), which provides for the judicial resolution of disputes, was not a defense to enforcement of an arbitration clause governed by the FAA. The FIL, like the CLRA, contains a nonwaiver provision that invalidates any contractual agreement to waive the statute's protections. Southland held that arbitration agreements may not be invalidated on the ground that state law provides for a nonwaivable judicial forum to resolve disputes: "We agree, of course, that a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of any contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law." (Southland, supra, 465 U.S. at p. 16,104 S.Ct. 852, fn. 11.)

3. Szetela Failed to Discuss Federal Preemption

Szetela, as previously noted, involved the identical Discover Bank arbitration clause at issue in this case. In Szetela, the plaintiff cardholder filed a class action against Discover Bank for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent or negligent misrepresentation, and deceptive business practices. The plaintiff in Szetela alleged Discover Bank had improperly charged cardholders fees for exceeding their credit limits (overlimit fees of $29) and other penalties. (Szetela, supra, 97 Cal.App.4th at p. 1097, 118 Cal.Rptr.2d 862.)
As in this case, Discover Bank moved to compel arbitration in Szetela and the plaintiff was ordered to arbitrate his claim on an individual basis. After Szetela prevailed at arbitration, recovering $29, Szetela appealed from the order compelling arbitration. Treating the appeal as a petition for writ of mandate, the appellate court reached the merits and vacated the order compelling arbitration. The appellate court struck the class action waiver from the arbitration clause, finding it to be unconscionable under California law. (Szetela, supra, 97 Cal.App.4th at pp. 1099-1102,118 Cal.Rptr.2d 862.)
In striking the class action waiver, Szetela applied California law and rejected the contract's selection of Delaware and federal law without conducting any choice of law analysis, stating that Discover Bank had failed to brief the choice of law issue. (Szetela, supra, 97 Cal.App.4th at p. 1099, fn. 3, 118 Cal.Rptr.2d 862.) Szetela struck the class action waiver as unconscionable under California law (citing Civ.Code, § 1670.5, subd. (a), which permits the revocation *406 of a contract on the ground of unconscionability) and section 2 of the FAA (citing Casarotto, supra, 517 U.S. at pp. 686-687, 116 S.Ct. 1652). (Szetela, supra, 97 Cal.App.4th at p. 1099, 118 Cal. Rptr.2d 862.)
Although Szetela cited the Casarotto decision, Szetela failed to discuss Casarotto in any detail. Szetela also failed to discuss the preemptive effect of the FAA. Instead, Szetela engaged in a public policy discussion similar to that found in cases such as AOL, supra, 90 Cal.App.4th 1, 108 Cal. Rptr.2d 699, which do not involve arbitration agreements governed by the FAA.
In finding the class action waiver unconscionable, Szetela first discussed procedural unconscionability. In that context, Szetela found unconscionable the unilateral manner in which the arbitration clause was added to the agreement. Given that the validity of "the arbitration clause as a whole" was not at issue in Szetela (97 Cal.App.4th at p. 1099, fn. 2, 118 Cal. Rptr.2d 862), however, Szetela erred in focusing on procedural unconscionability rather than on federal preemption.
Szetela found the Discover Bank class action waiver to be substantively unconscionable under California law, citing the California Unfair Practices Act (Bus. & Prof.Code, § 17200 et seq.) as one basis for its finding. (Szetela, supra, 97 Cal. App.4th at pp. 1101-1102, 118 Cal.Rptr.2d 862.) As the Southland and Casarotto decisions have shown, however, the FAA has preempted a state's ability to refuse to enforce an arbitration agreement on the basis of state substantive law. If a state statute requiring a nonwaivable judicial forum for resolution of consumer disputes must give way to section 2 of the FAA, it necessarily must follow that a state judicial policy precluding classwide arbitration waivers must also give way to section 2 of the FAA. Accordingly, we believe Szetela was wrongly decided.[12]
In its petition, Discover Bank states: "Permitting a state court to invalidate as *407 `unconscionable' discrete portions of an arbitration agreement that do not go to the issue of whether an arbitration agreement was formed is tantamount to a license to disregard the FAA altogether. Such a result is untenable given the United States Supreme Court's command that the FAA binds both state and federal courts." We agree with Discover Bank's position on this point. As explained in Southland, the FAA supersedes state law, and the FAA's substantive law is applicable in both state and federal court. (Southland, supra, 465 U.S. at pp. 10-12, 104 S.Ct. 852.)
The California Supreme Court has recognized that California law, like the FAA, favors the enforcement of valid arbitration agreements: "California law, like federal law, favors enforcement of valid arbitration agreements. (Broughton [v. Cigna Healthplans (1999)] 21 Cal.4th [1066,] 1074, [90 Cid.Rptr.2d 334, 988 P.2d 67].) As we have observed: `Two years after the FAA was enacted, this state adopted its first modern arbitration statute (Stats. 1927, ch. 225), declaring arbitration agreements to be irrevocable and enforceable in terms identical to those used in section 2 of the federal act, and since that time California courts and its Legislature have "consistently reflected a friendly policy toward the arbitration process." [Citation.] That policy was expanded and clarified in the current arbitration statute which was adopted in 1961 (Stats.1961, ch. 461, § 2 et seq.), and it continues to be the policy of this state.' (Keating v. Superior Court (1982) 31 Cal.3d 584, 601-602, [183 Cal. Rptr. 360, 645 P.2d 1192], disapproved on other grounds sub nom. Southland Corp. v. Keating (1984) 465 U.S. 1, [104 S.Ct. 852, 79 L.Ed.2d 1].) Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2; see also, Code Civ. Proc, § 1281.) In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (Armendariz, supra, 24 Cal.4th at pp. 97-98, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Accordingly, once an arbitration agreement is found to have been validly formed, California law, like federal law, favors its enforcement. In this previously discussed, due to plaintiffs failure to present any argument or authority to support his assertion that the arbitration agreement was not validly formed, we need not discuss the contract formation issue and have assumed the existence of a valid arbitration agreement.
With that assumption in mind, we conclude section 2 of the FAA, which mandates enforcement of arbitration agreements, preempts any otherwise applicable California judicial law finding class action waivers to be substantively unconscionable and invalid. In reaching this conclusion, we look to Perry v. Thomas, supra, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (Perry), in which the issue was "whether § 2 of the [FAA], which mandates enforcement of arbitration agreements, pre-empts § 229 of the California Labor Code, which provides that actions for the collection of wages may be maintained `without regard to the existence of any private agreement to arbitrate.' Cal. Lab.Code Ann. § 229 (West 1971)." (Id. at p. 484, 107 S.Ct. 2520.)
In upholding the arbitration agreement, Perry discussed the preemptive effect of the FAA as follows: "[T]he present appeal addresses the pre-emptive effect of the [FAA], a statute that embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Its general *408 applicability reflects that `[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered. . ..' [Dean Witter Reynolds Inc. v.] Byrd [1985] 470 U.S. [213,] 221, [105 S.Ct. 1238, 84 L.Ed.2d 158]. We have accordingly held that these agreements must be `rigorously enforce[d].' Ibid.; see Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, [107 S.Ct. 2332, 96 L.Ed.2d 185] (1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625-626, [105 S.Ct. 3346, 87 L.Ed.2d 444] (1985). This clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way." (Perry, supra, 482 U.S. at pp. 490-491, 107 S.Ct. 2520.)
In Perry, the lower courts had not addressed the plaintiffs claim that the arbitration agreement was an unconscionable and unenforceable contract of adhesion. In noting that the issue may be considered on remand, the United States Supreme Court addressed the choice of law issues that arise when unconscionability defenses are asserted, stating: "We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called `standing' and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, see Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, [103 S.Ct. 927, 74 L.Ed.2d 765] (1983), `save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2 (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. See Prima Paint [Corp. v. Flood & Conklin Mfg. Co.] 388 U.S. [395,]404, [87 S.Ct. 1801, 18 L.Ed.2d 1270] [1967]; Southland Corp. v. Keating, 465 U.S., at 16-17, [104 S.Ct. 852], n. 11. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (Perry, supra, 482 U.S. at p. 492-493,107 S.Ct. 2520, fn. 9.)
While a state may prohibit the contractual waiver of statutory consumer remedies, including the right to seek relief in a class action, such protections fall by the wayside when the waiver is contained in a validly formed arbitration agreement governed by the FAA. The anti-waiver provisions in statutes such as section 229 of the California Labor Code and section 31512 of the California Corporations Code are preempted by section 2 of the FAA. (Perry, supra, 482 U.S. at p. 492, 107 S.Ct. 2520; Southland, supra, 465 U.S. at p. 16, 104 S.Ct. 852, fn. 11.) Similarly, we conclude the anti-waiver language found in judicial decisions such as AOL and Szetela also has been preempted by section 2 of the FAA.
Accordingly, we find the lower court erred in granting the motion for reconsideration *409 and striking the class action waiver from the arbitration agreement.

4. The Issues Are Substantive, Not Procedural

Plaintiff contends preemption is not an issue in this case because in state court, the FAA does not preempt matters of procedure, such as class action procedural rules, which are to be governed by state law. In support of this position, plaintiff cites Blue Cross, supra, 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779, which held that because section 4 of the FAA does not apply in state court (section 4 requires federal district courts to apply Federal Rules of Civil Procedure in determining motions to compel arbitration), in the absence of an express agreement to the contrary, state courts may order classwide arbitration where permitted by California law. (Id. at pp. 62-63, 78 Cal.Rptr.2d 779.) The critical distinction between this case and Blue Cross, however, is that here, the agreement contains a class action waiver clause.
Even if we were to view the issues before us as procedural, that would not justify applying state law to this proceeding. Federal rules of procedure are not binding on state courts except where the applicable state rules would defeat the purpose of the FAA. (See Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 409, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) In this case, it would defeat the purpose of the FAA, which was enacted primarily to ensure that arbitration agreements are enforced according to their terms (Volt, supra, 489 U.S. at p. 479, 109 S.Ct. 1248), to strike the class action waiver from the agreement. The FAA's "primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate . . ., so too may they specify by contract the rules under which that arbitration will be conducted." (Ibid.)
In any event, the issues before us are substantive, not procedural. Blue Cross dealt primarily with preemption issues under section 4 of the FAA, and left it to the trial court to determine, in the first instance, whether to impose classwide arbitration in the absence of any contractual provision on the subject. Blue Cross mentioned, but did not decide, the defendant's contention that because the agreement had adopted the rules of the American Arbitration Association (AAA), which do not provide for classwide arbitration, it would interfere with the parties' intention to impose classwide arbitration under California's "`hybrid'" system requiring judicial intervention. (Blue Cross, supra, 67 Cal. App.4th at p. 64, 78 Cal.Rptr.2d 779.) Blue Cross did not decide this issue, finding it to be premature given the absence of a trial court decision on the certification issue. (Ibid.)
Although Blue Cross did not decide the issue, the issue demonstrates that arguments of unconscionability and unfairness run in both directions where classwide arbitration is concerned. While California courts have, for policy reasons, declared class action waivers to be unconscionable from the consumer's point of view, a competing policy exists to enforce valid arbitration agreements. (9 U.S.C. § 2.) Although California courts have recognized the consumer protection value of classwide arbitration, that is not the sole consideration. Courts should also consider the "California rule which prevents reweighing the merits of an arbitrator's decision." (Siegel v. Prudential Ins. Co. (1998) 67 Cal.App.4th 1270, 1290, 79 Cal.Rptr.2d 726; Code Civ. Proc., § 1286.2.) The FAA does not preempt this rule. (Siegel, at p. 1290, *410 79 Cal.Rptr.2d 726.) As judicial review of the merits of an arbitrator's decision may not be had under California law, a multimillion dollar class arbitration award entered on nothing more than mere whim cannot be corrected under California law. Just as consumers may be harmed by the enforcement of an unconscionable class action waiver, defendant companies may be able to prove they will be prejudiced if classwide arbitration is imposed where, even though the arbitration agreement is silent on the subject, the agreement has adopted arbitration rules, such as those of the AAA, that do not provide for classwide arbitration.
In this case, the prejudice to Discover Bank that would be caused by altering the parties' agreement is clear. As classwide arbitration in California vastly increases the scope of potential liability and damages that a defendant will face without the ability to seek judicial review of the merits of the arbitrator's decision, we conclude the decision to strike a classwide arbitration ban from a valid agreement alters substantive, and not just procedural, rights of both parties.

DISPOSITION
The petition for writ of mandate is granted. We direct the lower court to vacate its July 11, 2002, order granting plaintiffs motion for reconsideration and to issue a new and different order denying same. The lower court's original order granting the motion to compel arbitration shall be reinstated in full, requiring plaintiff to arbitrate on an individual basis and submit to the class action waiver. Discover Bank is entitled to its costs on this writ proceeding.
We concur: SPENCER, P.J., and MIRIAM A. VOGEL, J.
NOTES
[1] Section 4 of the FAA requires in part that federal district courts apply federal procedural rules in deciding motions to compel arbitration and, where warranted, to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."
[2] Section 2 of the FAA provides in part that arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
[3] Perry v. Thomas (1987) 482 U.S. 483, 490-491, 107 S.Ct. 2520, 96 L.Ed.2d 426; Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 97-98, 99 Cal. Rptr.2d 745, 6 P.3d 669; Blue Cross, supra, 67 Cal.App.4th at p. 51, 78 Cal.Rptr.2d 779 ("[A] state law that invalidates the express terms of an arbitration agreement is preempted by the act.").
[4] In Keating, the California Supreme Court considered whether class action arbitration is permissible under California law, assuming a class is maintainable. The court noted that consolidation of arbitration is authorized in certain cases in California. (Code Civ. Proc, § 1281.3.) Given the analogous authority to consolidate arbitration proceedings, the court found that class action arbitration should be permitted when the interests of justice so require. (Keating, supra, 31 Cal.3d at pp. 611-613, 183 Cal.Rptr. 360, 645 P.2d 1192.) The Court held that whether classwide arbitration is justified should be left to the trial court's discretion. (Id. at p. 613, 183 Cal.Rptr. 360, 645 P.2d 1192.) Factors to be considered include (1) the factors normally relevant to class certification; (2) special circumstances of arbitration including what court supervision may be required and the availability of consolidation as an alternative; (3) whether prejudice would result; and (4) whether the parry opposing classwide arbitration should be allowed the option of remaining in state court. (Id. at pp. 613-614, 183 Cal.Rptr. 360, 645 P.2d 1192.)
[5] The change of terms clause in effect when plaintiff's credit card was issued stated that Discover Bank could "change any term or part of this Agreement, including any Finance Charge rate, fee or method of computing any balance upon which the Finance Charge rate is assessed, by sending you a written notice at least 30 days before the change is to become effective. Your express written agreement to any such change or the use of your Account or the card on or after the effective date of the change means that you accept and agree to them. We may apply any such change to the outstanding balance of your Account on the date of the change of terms and to new charges made after that date."

In March 1999, the change of terms clause was amended to permit the unilateral "addition" of new terms or parts to the agreement. Discover Bank informed its existing cardholders (including plaintiff) of this change as follows: "Change of Terms. We are changing this section to permit us to change any term or part of the Agreement or to add any new term or part to the Agreement by sending you a written notice at least 15 days, instead of 30 days, before the change is to become effective. In addition, we are changing this section to require you to notify us in writing within 15 days, instead of 30 days, after the mailing of the notice of change that you do not agree to the change." (Italics added.)
[6] In Bank of America, Division Three of the First District Court of Appeal applied California contract formation law to invalidate an alternate dispute resolution (ADR) clause added to Bank of America's cardholder agreement. Like Discover Bank's cardholder agreement, the Bank of America agreement contained a change of terms clause that permitted the bank's unilateral amendment of the agreement. As in this case, Bank of America notified its existing cardholders of the new ADR clause by means of a "bill stuffer" (an insert sent with the cardholder's monthly billing statement). (Bank of America, supra, 67 Cal.App.4th at pp. 783, 785-786, 791, 79 Cal.Rptr.2d 273.) In Bank of America, the plaintiff cardholders contended the change of terms clause did not entitle the bank to add new terms, such as the ADR, to the agreement. The change of terms clause, the cardholders contended, permitted only the modification of existing terms that were mentioned in the original agreement. The original agreement was silent about the method and forum of dispute resolution. (Id. at p. 800, 79 Cal.Rptr.2d 273.)

Given that the ambiguous change of terms clause was "reasonably susceptible to the interpretations offered by both sides," the Bank of America court interpreted the change of terms clause according to standard rules of contract interpretation. (Bank of America, supra, 67 Cal.App.4th at p. 800, [79 Cal. Rptr.2d 273].) Applying those rules, the Bank of America court concluded the change of terms clause did not authorize the bank unilaterally to add an ADR clause and force a jury waiver by means of "bill stuffers": "Thus, after analyzing the credit account agreements in light of the standard canons of contract interpretation, we conclude that when the account agreements were entered into, the parties did not intend that the change of terms provision should allow the Bank to add completely new terms such as an ADR clause simply by sending out a notice. Further, to the extent that application of these canons of construction has not removed all uncertainty concerning the meaning of the provision, we resort to the rule that ambiguous contract language must be interpreted most strongly against the party who prepared it (Civ.Code, § 1654), a rule that applies with particular force to the interpretation of contracts of adhesion, like the account agreements here. [Citations.] [Application of this rule strengthens our conviction that the parties did not intend that the change of terms provision should permit the Bank to add new contract terms that differ in kind from the terms and conditions included in the original agreements."]. (Id. at p. 803, [79 Cal.Rptr.2d 273], fn. omitted.) Accordingly, the appellate court in Bank of America granted declaratory relief to the individual plaintiffs and refused to enforce the ADR clause against them. (Id. at pp. 806-807, [79 Cal.Rptr.2d 273].)
[7] Discover Bank's counsel informed the trial court that should the prohibition against class action arbitration be invalidated as unconscionable, Discover Bank would elect to proceed with a judicial class action.
[8] There apparently are no published Delaware state appellate court decisions on the validity of class action waivers under Delaware law. Although Delaware state trial court decisions were cited below, we do not rely upon them.

The closest authority on the subject is Johnson, supra, 225 F.3d 366, a federal case arising out of a Delaware loan transaction. In Johnson, the Third Circuit upheld an arbitration clause governed by the FAA, even though to do so would deprive the plaintiff of the right to bring a judicial class action in federal court. Johnson follows the line of federal appellate decisions which, under section 4 of the FAA, bar classwide arbitration or consolidated arbitration in federal district courts absent an express agreement to arbitrate class or consolidated claims. (See Champ v. Siegel Trading Co., Inc. (7th Cir. 1995) 55 F.3d 269, 271; Government of United Kingdom v. Boeing Co. (2d Cir. 1993) 998 F.2d 68, 74; American Centennial Ins. Co. v. National Cos. Co. (6th Cir.1991) 951 F.2d 107, 108; Baesler v. Continental Grain Co. (8th Cir. 1990) 900 F.2d 1193, 1195; Protective Life Ins. Corp. v. Lincoln Nat. Life Ins. Corp. (11th Cir. 1989) 873 F.2d 281, 282; Del E. Webb Const, v. Richardson Hosp. Authority (5th Cir. 1987) 823 F.2d 145, 150; Weyerhaeuser Co. v. Western Seas Shipping Co. (9th Cir. 1984) 743 F.2d 635, 637; but see New England Energy Inc. v. Keystone Shipping Co. (1st Cir. 1988) 855 F.2d 1.) Given that section 4 of the FAA does not bar state courts from ordering classwide arbitration (Blue Cross, supra, 67 Cal.App.4th at pp. 62-63, [78 Cal.Rptr.2d 779]), Johnson does not definitively establish the validity of class action waivers under Delaware law.
The plaintiff borrower in Johnson filed a class action suit against the defendant lender (Delaware Bank), alleging the bank's loan agreement failed to disclose interest rate information required under the Truth in Lending Act (TILA) and Electronic Fund Transfer Act (EFTA). The bank sought to stay the class action and moved to compel arbitration. The Third Circuit enforced the arbitration clause in Johnson, despite the plaintiff's loss of a potential class action remedy under the TILA. Johnson noted the Supreme Court had similarly upheld an arbitration clause in Gilmer v. Interstate/Johnson Lane Corp. (1991) 500 U.S. 20, [111 S.Ct. 1647, 114 L.Ed.2d 26], a case brought under the Age Discrimination in Employment Act (ADEA), even though the plaintiff lost the statutory right to bring a class action under the ADEA. (Johnson, supra, 225 F.3d at pp. 374, 377.) Johnson also quoted from the Supreme Court's decision in another TILA case: "`[T]hough pursuing individual claims in arbitration may well be less attractive than pursuing a class action in the courts, we do not agree that compelling arbitration of the claim of a prospective class action plaintiff irreconcilably conflicts with TILA's goal of encouraging private actions to deter violations of the Act. Whatever the benefits of class actions, the FAA 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.' Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 20, [103 S.Ct. 927, 74 L.Ed.2d 765] (1983) (emphasis in the original)." (Id. at pp. 374-375.)
[9] As for the class claims, the trial court noted another cardholder not bound by the arbitration clause might be found to represent a putative class of cardholders who had rejected the arbitration clause.
[10] We reject as unfounded plaintiff's contention that the writ petition, filed 61 days after the motion for reconsideration was granted, is barred by the doctrine of laches. There is no showing of unreasonable delay and prejudice. (H.D. Arnaiz, Ltd. v. County of San Joaquin (2002) 96 Cal.App.4th 1357, 1368, 118 Cal. Rptr.2d 71.)

We also reject plaintiff's contention that the writ proceeding is premature given that no class has been certified as yet. This proceeding is in a procedural posture similar to that in Blue Cross, supra, 67 Cal.App.4th 42, [78 Cal.Rptr.2d 779], where the appellate court concluded the matter was ripe for writ review even though no class had yet been certified. The court stated: "To allow discovery to proceed as to the existence of a class if classwide arbitration is not allowed would waste judicial resources and burden the parties with unnecessary expense of time and money. In addition, to defer a decision on this issue would result in `lingering uncertainty in the law.' (Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 170, [188 Cal.Rptr. 104, 655 P.2d 306].)" (Id. at p. 48, [78 Cal.Rptr.2d 779].) Finally, we reject plaintiff's contention that the order granting the motion for reconsideration was the equivalent of a denial of Discover Bank's motion to compel arbitration and, as such, was an appealable order. (Code Civ. Proc, § 1294, subd. (a).) According to the record, the motion to compel arbitration was granted, not denied, despite the trial court's ultimate refusal to enforce the class action waiver clause.
[11] "[C]hoice of law provisions are usually respected by California courts." (Smith, Valentino & Smith, Inc. v. Superior Court (1976) 17 Cal.3d 491, 494, 131 Cal.Rptr. 374, 551 P.2d 1206.) "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." (Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.4th 459, 464-465, 11 Cal.Rptr.2d 330, 834 P.2d 1148, fn. omitted (Nedlloyd).)

"[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue. . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (Nedlloyd, supra, 3 Cal.4th at p. 466, [11 Cal. Rptr.2d 330, 834 P.2d 1148], fns. omitted.)
[12] Due to our disagreement with the Szetela decision, we place no reliance upon cases cited by plaintiff that have adopted Szetela's reasoning. (See Luna v. Household Finance Corp. III (W.D.Wa.2002) 236 F.Supp.2d 1166; ACORN v. Household International, Inc. (N.D.Cal.2002) 211 F.Supp.2d 1160, 1170-1171.)

In the recent decision of Mandel v. Household Bank (Nevada) Nat. Assn. (2003) 105 Cal.App.4th 75, 129 Cal.Rptr.2d 380, 2003 WL 57282 Division Three of the Fourth Appellate District (the same division that decided the Szetela case) severed and invalidated as unconscionable a class action waiver clause contained in a credit card arbitration agreement that was otherwise upheld under Nevada law. Mandel rejected the bank's contention that the FAA had preempted a state's ability to refuse to enforce a class action waiver clause as substantively unconscionable under state law. Mandel discussed the FAA preemption issue as follows: "Defendant asserts that to some undefined extent, a state's public policy is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), and the parties' agreement as to the manner of arbitration, including a prohibition on class treatment, must be enforced. Certainly, if a state's law disfavors arbitration and creates unreasonable hurdles to the enforcement of arbitration agreements governed by the FAA, it is preempted. (See Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 687, [116 S.Ct. 1652, 134 L.Ed.2d 902].) But Nevada law favors arbitration of disputes (Phillips v. Parker (1990) [106 Nev. 415], 794 P.2d 716, 718), and therefore federal preemption is inapplicable." (Mandel, supra, 105 Cal.App.4th at p. 83, 129 Cal.Rptr.2d 380.)
It appears Mandel rejected the FAA preemption argument without recognizing that its refusal to uphold the class action waiver was contrary both to the terms of the arbitration agreement and Nevada's policy of favoring arbitration agreements. Given that the FAA's substantive law is applicable in both state and federal court (Southland, supra, 465 U.S. at pp. 10-12, [104 S.Ct. 852]), we do not find Mandel to be persuasive authority on the preemption issue and decline to follow it.