Catherine INGLE, Plaintiff–Appellee,

v.

**CIRCUIT CITY STORES, INC.,**
**a Virginia Corporation,**
**Defendant–Appellant.**

No. 99–56570.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Filed May 13, 2003.

Rex Darrell Berry, Davis, Grimm, Payne, Marra, & Berry, Seattle, WA, for the defendant-appellant.

Michael H. Crosby, San Diego, CA, for the plaintiff-appellee.

Before: PREGERSON, THOMPSON, and WARDLAW, Circuit Judges.

PREGERSON, Circuit Judge.

This appeal arises from the district court's denial of defendant-appellant Circuit City Stores, Inc.'s (Circuit City) motion to compel arbitration. Circuit City moved to compel arbitration in response to the action plaintiff-appellee Catherine Ingle filed in the Southern District of California, in which she alleged employment discrimination in violation of state and federal civil rights statutes. Circuit City argues on appeal that the district court erred in declining to enforce an arbitration agreement requiring Ingle and Circuit City to arbitrate employment-related legal claims. We have jurisdiction under 9 U.S.C. § 16(a), and we affirm.

## FACTS and PROCEDURAL BACKGROUND

In September 1996, Catherine Ingle applied to become an Associate[1] at a Circuit City electronics retail store in San Diego County, California. Ingle was required to sign an arbitration agreement for Circuit City to consider her employment application. By signing the arbitration agreement, Ingle agreed to resolve all employment-related legal claims through arbitration.

On June 21, 1999, Ingle filed this action against Circuit City in the Southern District of California. In her complaint, Ingle alleged claims of sexual harassment, sex discrimination, and disability discrimination under the California Fair Employment and Housing Act, Cal. Gov't Code § 12940, et seq. (FEHA). She also alleged claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

On July 16, 1999, Circuit City moved to compel arbitration. On September 22, 1999, the district court entered an order denying the motion on the ground that the arbitration agreement was unenforceable under *Duffield v. Robertson, Stephens & Co.*, 144 F.3d 1182 (9th Cir.1998). The district court held that Circuit City's form application for employment unlawfully conditioned Ingle's employment on her agreement to forego statutory rights and remedies. Circuit City now appeals, arguing primarily that its arbitration agreement is enforceable under *Duffield*[2] and California contract law.

## STANDARD OF REVIEW

▇ We review de novo a district court's denial of a motion to compel arbitration. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir.2001), *cert. denied*, 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002); *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir.1994).

## DISCUSSION

I. Circuit City's Arbitration Agreement

Circuit City compels all of its employees and job applicants to sign an arbitration agreement requiring arbitration of all employment-related legal claims. The "Circuit City Dispute Resolution Rules and Procedures" (Rules and Procedures) determine the substance and procedures of the arbitration agreement. Ingle and Circuit City agree that the arbitration agreement

1. Circuit City refers to all job applicants and to current and former employees as "Associates."

2. Because we decide this case solely under California law of unconscionability, we need not reach Circuit City's argument that *Duffield* does not preclude enforcement of its arbitration agreement. *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 788 n. 10 (9th Cir.2002) (declining to rule on district court's alternative conclusion that arbitration agreement was invalid under *Duffield* because the court's conclusion under state contract law disposed of the appeal).

Ingle signed provided that the Rules and Procedures governing an arbitration would be those in effect at the time the claim arose. Because the 1998 Rules and Procedures were in effect at the time Ingle's civil rights claims arose, we examine these rules in analyzing whether this arbitration agreement is enforceable. However, our holdings as to substantive unconscionability reside with the discrete provisions we examine, and therefore would likely extend beyond this particular version of the Rules and Procedures.

## II. The Doctrine of Unconscionability

■ The Federal Arbitration Act (FAA) provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2002). But when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Id.; Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 683, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 782 (9th Cir.2002).

■ It is a settled principle of law that "arbitration is a matter of contract." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Federal law "directs courts to place arbitration agreements on equal footing with other contracts." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Arbitration agreements, accordingly, are subject to all defenses to enforcement that apply to contracts generally. *See* 9 U.S.C. § 2 (2002).

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Ingle was employed in California; we therefore evaluate Circuit City's arbitration agreement under the contract law of that state. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir.2002) (*"Adams III"*); *see also Ticknor,* 265 F.3d at 937 (applying Montana law to determine whether arbitration clause was valid).

■ Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement. *See Ferguson,* 298 F.3d at 782. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 486, 186 Cal. Rptr. 114 (1982); *see also* U.C.C. § 2–302; Cal. Civ.Code § 1670.5; Restatement (Second) of Contracts § 208 (1981). Thus, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." *Ferguson,* 298 F.3d at 783; *accord Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). Significantly, the California Supreme Court has noted that procedural and substantive unconscionability "need not be present in the same degree." *Id.* In *Armendariz,*[3] the court held that:

---

**3.** At oral argument, Circuit City suggested that *Armendariz* is preempted by the FAA, because its holding, Circuit City asserts, imposes a heightened standard for enforcement of arbitration agreements. We disagree. The Supreme Court has held that "[c]ourts may not ... invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (emphasis in original). "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Id.* (citations and quotations omitted). How-

"[e]ssentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Id.* at 114 (quoting 15 Williston on Contracts § 1763A, at 226–27 (3d ed. 1972)) (other citations omitted).

### A. Procedural Unconscionability

 To determine whether the arbitration agreement is procedurally unconscionable the court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Servs., Inc.,* 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348, 352–53 (1999). An inquiry into whether Circuit City's arbitration agreement involves oppression or surprise is central to that analysis. A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138, 145 (1997) (citation omitted). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal quotation marks omitted).

 There is no doubt that Circuit City's arbitration agreement is oppressive. In *Adams III,* we held that the arbitration agreement at issue in that case was procedurally unconscionable under California law because:

> Circuit City, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms—they must take the contract or leave it.

*Adams III,* 279 F.3d at 893. Procedurally, there is absolutely no difference between the version of the arbitration agreement we evaluated in *Adams III* and the version we review in this case. Because of the stark inequality of bargaining power between Ingle and Circuit City, we conclude that Circuit City's 1998 arbitration agreement is also procedurally oppressive. *See id.; Ferguson,* 298 F.3d at 783–84; *Armendariz,* 24 Cal.4th at 114–15, 99 Cal.Rptr.2d 745, 6 P.3d at 690; *see also Stirlen,* 51 Cal.App.4th at 1533–34, 60 Cal.Rptr.2d 138 (finding procedural unconscionability when an arbitration clause was part of a contract of adhesion in which the employee was presented with an employ-

---

ever, the California Supreme Court in *Armendariz* did not single out arbitration provisions for suspect status. Rather, the *Armendariz* court applied ordinary principles of contract law in evaluating the arbitration agreement in that case. Because *Armendariz* held that the arbitration agreement at issue was unenforceable under generally applicable California contract law, it was fully consistent with federal law. *See Doctor's Assocs.,* 517 U.S. at 687, 116 S.Ct. 1652; *First Options,* 514 U.S. at 944, 115 S.Ct. 1920. Thus, Circuit City's argument that *Armendariz* imposes a heightened standard for enforcement of arbitration agreements is plainly without merit. *See Ting v. AT&T,* 319 F.3d 1126, 1148 (9th Cir.2003); *Ferguson,* 298 F.3d at 782–83; *Adams III,* 279 F.3d at 893; *see also Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003) (restating the Court's holding in *Armendariz*).

ment contract on a "take it or leave it" basis).

■ Circuit City argues that because Ingle had sufficient time—three days—to consider the terms of the arbitration agreement, the court should not find this agreement procedurally unconscionable. We disagree. The amount of time Ingle had to consider the contract is irrelevant. We follow the reasoning in *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal. Rptr.2d 862 (2002), in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable. *Id.* at 1100, 118 Cal.Rptr.2d 862. Rather, when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and, therefore, procedural unconscionability, are present." *Ferguson,* 298 F.3d at 784; *Szetela,* 97 Cal.App.4th at 1100, 118 Cal.Rptr.2d 862.

Circuit City contended at oral argument that our recent decisions in *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104 (9th Cir.2002), and *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198 (9th Cir.2002), should bear on our analysis regarding procedural unconscionability. However, we clearly stated that the arbitration agreements in those cases were not procedurally unconscionable *only* because Najd and Ahmed each had a meaningful opportunity to opt out of the arbitration program. *See Najd,* 294 F.3d at 1108; *Ahmed,* 283 F.3d at 1200. To invoke the holdings in *Ahmed* and *Najd,* Circuit City must show that it provided Ingle a meaningful opportunity to decline to enter into the arbitration agreement.[4] Ingle had no such opportunity, and

therefore our holding in *Adams III* controls in this decision.

The California Supreme Court's decision in *Armendariz* is also instructive in this case. The *Armendariz* court held that it is procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievances in a judicial forum. *See Armendariz,* 24 Cal.4th at 114–15, 99 Cal. Rptr.2d 745, 6 P.3d at 690. Circuit City's arbitration agreement similarly requires, as a condition of employment, that employees waive their right to bring future claims in court. *See Ferguson,* 298 F.3d at 784. Ingle had no meaningful opportunity to opt out of the arbitration agreement, nor did she have any power to negotiate the terms of the agreement. Therefore, because Circuit City presented the arbitration agreement to Ingle on an adhere-or-reject basis, we conclude that the agreement is procedurally unconscionable.

B. Substantive Unconscionability

■ Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney,* 70 Cal.App.4th at 1330, 83 Cal.Rptr.2d 348 (internal quotation marks omitted). In evaluating the substance of a contract, courts must analyze the contract "as of the time [it] was made." *A & M Produce,* 135 Cal.App.3d at 487, 186 Cal.Rptr. 114.

Several substantive terms of Circuit City's arbitration agreement are one-sided. The provisions concerning coverage of claims, the statute of limitations, the prohibition of class actions, the filing fee, cost-splitting, remedies, and Circuit City's uni-

---

4. Circuit City does not even consider the applications from job applicants who elect not to enter into the arbitration agreement. Ingle had no meaningful option; she either had to walk away from the employer altogether or sign the arbitration agreement for fear of automatic rejection or termination at the outset of her employment. *See Adams III,* 279 F.3d at 893.

lateral power to modify or terminate the arbitration agreement all operate to benefit the employer inordinately at the employee's expense. Because these one-sided provisions grossly favor Circuit City, we conclude that, under California law, these terms are substantively unconscionable, and address each term in turn.

### 1. Claims Subject to Arbitration

██ The one-sided coverage we found objectionable in *Adams III* remains in the version of the arbitration agreement we evaluate in this case.[5] *See Adams III*, 279 F.3d at 893–94. Circuit City's arbitration agreement applies only to "any and all employment-related legal disputes, controversies or claims of an Associate," thereby limiting its coverage to claims brought by employees. By the terms of this agreement, Circuit City does not agree to submit to arbitration claims it might hypothetically bring against employees. Without a reasonable justification for such a glaring disparity based on "business realities," "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." *Armendariz*, 24 Cal.4th at 117, 99 Cal. Rptr.2d 745, 6 P.3d at 692; *see* Cal. Civ. Code § 1670.5(b). Therefore, as we held in *Adams III*, this "unjustified one-sidedness deprives the [arbitration agreement] of the 'modicum of bilaterality' that the California Supreme Court requires for contracts to be enforceable under California law." *Adams III*, 279 F.3d at 894; *Armendariz*, 24 Cal.4th at 117, 99 Cal. Rptr.2d 745, 6 P.3d at 692.

This case presents a broad concern with respect to arbitration agreements between employers and employees. Circuit City argues that the arbitration agreement subjects Circuit City to the same terms that apply to its employees. But this argument is "exceedingly disingenuous,"[6] because the

---

**5.** Rule 2 of the arbitration agreement provides:

> Except as otherwise limited herein, any and all employment-related legal disputes, controversies or claims *of an Associate* arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment with Circuit City or one of its affiliates shall be settled exclusively by final and binding arbitration before a neutral, third-party Arbitrator selected in accordance with these Dispute Resolution Rules and Procedures. Arbitration shall apply to any and all such disputes, controversies or claims whether asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate company.
>
> All previously unasserted *Associate* claims arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of example, these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Fair Labor Stan-

dards Act (FLSA), 42 U.S.C. § 1981, as amended, including the amendments of the Civil Rights Act of 1991, the Employee Polygraph Protection Act, the Employee Retirement Income Security Act (ERISA), state discrimination statutes, state statutes and/or common law regulating employment termination, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

> Claims by Associates for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act shall not be subject to arbitration. Statutory or common law claims alleging that Circuit City retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration.

(emphasis added).

**6.** *See Stirlen*, 51 Cal.App.4th at 1540–41, 60 Cal.Rptr.2d 138 (criticizing an arbitration agreement in which the employer "identifies

agreement is one-sided anyway. Because the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes.[7]

The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employers.[8] By essentially covering only claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided even without the express limitation to claims brought by employees.[9]

 Thus, we conclude that, under California law, a contract to arbitrate between an employer and an employee, such as the one we evaluate in this case, raises a rebuttable presumption of substantive unconscionability. Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral—as is required under California law—with respect to a particular employee, courts should presume such contracts substantively unconscionable.[10] *See Ferguson*, 298 F.3d at 784–85; *Adams III*, 279 F.3d at 893–94; *Armendariz*, 24 Cal.4th at 115–17, 99 Cal. Rptr.2d 745, 6 P.3d 669; *Stirlen*, 51 Cal. App.4th at 1536–39, 60 Cal.Rptr.2d 138.

Circuit City's arbitration agreement expressly limits its scope to claims brought

---

no provision of the ... contract and no statute likely to give rise to a claim[the employer] would be compelled to submit to arbitration").

**7.** *See Armendariz*, 24 Cal.4th at 115, 99 Cal. Rptr.2d 745, 6 P.3d at 690; *see also Ting*, 319 F.3d at 1150 (citing *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 116 Cal.Rptr.2d 671, for the proposition that the "arbitration forum, though equally applicable to both parties ... [is] relevant to finding of unconscionability because 'repeat player effect' rendered provision disadvantageous to weaker party"). *See generally* Jean R. Sternlight, *Mandatory Binding Arbitration and the Demise of the Seventh Amendment Right to a Jury Trial*, 16 Ohio St. J. on Disp. Resol. 669 (2001).

**8.** The list of legal claims the arbitration agreement covers is telling. *See* note 5. The only claims the arbitration agreement mentions expressly as arbitrable are those claims employees would assert against Circuit City. *See Ting v. AT&T*, 319 F.3d at 1149 ("In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision.") (citing *Acorn v. Household Int'l, Inc.*, 211 F.Supp.2d 1160, 1172 (N.D.Cal.2002); *Szetela*, 118 Cal.Rptr.2d at 868).

**9.** *Cf. Ferguson*, 298 F.3d at 784–85; *Adams III*, 279 F.3d at 893–94; *Armendariz*, 24 Cal.4th at 115–17, 99 Cal.Rptr.2d 745, 6 P.3d at 690–92; *Stirlen*, 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138.

**10.** We note that our conclusion is consistent with the federal policy favoring arbitration agreements. The FAA does express Congress's intention to give effect to arbitration agreements generally, but it does not supplant state law governing the unconscionability of adhesive contracts. *Adams III*, 279 F.3d at 895; *Ticknor*, 265 F.3d at 935. We do not here utter a blanket rule outlawing arbitration agreements in the employment context. Rather, consistent with California law, we find the coverage of such arbitration agreements typically and grossly one-sided, and therefore, presumptively substantively unconscionable. An employer may rebut this presumption if it can demonstrate that its contract to arbitrate maintains the "modicum of bilaterality" required under California contract law. *See Armendariz*, 24 Cal.4th at 117–18, 99 Cal.Rptr.2d 745, 6 P.3d at 692. Moreover, under California contract law, a court may only refuse to enforce a contract or contract provision if it is *both* substantively *and* procedurally unconscionable. *See Ahmed*, 283 F.3d at 1199–1200 (enforcing an arbitration agreement that was substantively unconscionable but lacked procedural unconscionability).

by employees, which alone renders it substantively unconscionable. Even if the limitation to claims brought by employees were not explicit, an arbitration agreement between an employer and an employee ostensibly binds to arbitration only employee-initiated actions. Circuit City does not furnish any evidence that would indicate that the coverage of the arbitration agreement is mutual. Therefore, we conclude that the coverage of the arbitration agreement is substantively unconscionable.[11]

### 2. Statute of Limitations

The Circuit City arbitration agreement states that the form by which an employee requests arbitration:

> shall be submitted not later than one year after the date on which the Associate knew, or through reasonable diligence should have known, of the facts giving rise to the Associate's claim(s). The failure of an Associate to initiate an arbitration within the one-year time limit shall constitute a waiver with respect to that dispute relative to that Associate.

■ We have already expressly criticized Circuit City's statute of limitations provision, *Adams III*, 279 F.3d at 894–95, finding that Circuit City's "strict one year statute of limitations on arbitrating claims . . . would deprive [Associates] of the benefit of the continuing violation doctrine available in FEHA suits." *Id.* This rule is identical to the one we held unconscionable in *Adams III*. *Id.* While Circuit City insulates itself from potential damages, an employee foregoes the possibility of relief under the continuing violations doctrine. Therefore, because the benefit of this provision flows only to Circuit City, we conclude that the statute of limitations provision is substantively unconscionable.

### 3. Prohibition of Class Actions

■ Circuit City's arbitration agreement directs arbitrators not to consolidate claims of different employees into one proceeding and generally prohibits the arbitrator from hearing an arbitration as a class action. We find that this bar on class-wide arbitration is patently one-sided, and conclude that it is substantively unconscionable.

The ability to pursue legal claims in a class proceeding has firm roots in both the federal and California legal systems. The United States Supreme Court has held that the "class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable." *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The California class action statute "rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." *Weaver v. Pasadena Tournament of Roses Ass'n*, 198 P.2d 514, 516, 32 Cal.2d 833, 837 (1948); *see* Cal. Civ. Proc. § 382 (2003); Fed. R.Civ.P. 23.

In *Szetela*, the California Court of Appeal severed a provision barring class-wide arbitration from a credit card company's arbitration agreement. *Szetela*, 97 Cal. App.4th at 1100–02, 118 Cal.Rptr.2d 862. In the court's view, by barring class arbitration in a contract of its own drafting, the defendant "sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights." *Id.* at 1101, 118 Cal.Rptr.2d 862. The *Szetela* court found the bar on class arbitration "harsh and unfair" to

---

11. This holding—assuming procedural unconscionability—would suffice to render this agreement unconscionable, but we elect to

address other substantive terms of Circuit City's arbitration agreement.

those who could benefit from proceeding as a class and offensive to the policies underlying class actions, such as promoting "judicial economy and streamlin[ing] the litigation process in appropriate cases." *Id.* at 1101–02, 118 Cal.Rptr.2d 862.[12] The court reasoned that the

> manifest one-sidedness of the no class action provision at issue here is blindingly obvious.
>
> Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover, because credit card companies typically do not sue their customers in class action lawsuits.

*Szetela,* 97 Cal.App.4th at 1100–01, 118 Cal.Rptr.2d 862.[13]

The *Szetela* court rejected Discover Bank's bar on class-wide proceedings as substantively unconscionable because the actual effect of the provision was to deny a procedural benefit only its customers would employ. In the context of an arbitration agreement between an employer and an employee, Circuit City adopts just such a provision. We cannot conceive of any circumstances under which an employer would bring a class proceeding against an employee.[14] Circuit City, through its bar on class-wide arbitration, seeks to insulate itself from class proceedings while conferring no corresponding benefit to its employees in return. This one-sided provision proscribing an employee's ability to initiate class-wide arbitration operates solely to the advantage of Circuit City. Therefore, because Circuit City's prohibition of class action proceedings in its arbitral forum is manifestly and shockingly one-sided, it is substantively unconscionable.[15]

---

**12.** *See also Luna v. Household Fin. Corp. III,* 236 F.Supp.2d 1166, 1178–79 (W.D.Wash. 2002) (finding bar on class-wide arbitration substantively unconscionable); *Acorn v. Household Int'l, Inc.,* 211 F.Supp.2d at 1170–71 (same).

**13.** The California Supreme Court touched upon this subject in *Keating v. Superior Court,* 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (1982), *rev'd on other grounds sub nom. Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). That court held that "[i]f ... an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, effectively foreclosing many individual claims, it may well be oppressive and may defeat the expectations of the nondrafting party." *Id.* at 610, 183 Cal.Rptr. 360, 645 P.2d 1192. "Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to retain the benefits of its wrongful conduct." *Id.* at 609, 183 Cal.Rptr. 360, 645 P.2d 1192 (internal citations, alterations, and quotations omitted). The *Keating* court instructed that an arbitration agreement that automatically eliminates the right to a class-wide proceeding would have the "substantial" effect of contravening the principles behind class action policies and "chilling the effective protection of interests common to a group." *Id.*

**14.** *See Ting,* 319 F.3d at 1150 ("It is not only difficult to imagine AT&T bringing a class action against its own customers, but AT&T fails to allege that it has or would ever do so.").

**15.** We again reject the reasoning in *Discover Bank v. Superior Court of L.A. County,* 105 Cal.App.4th 326, 129 Cal.Rptr.2d 393 (2003). *See Ting,* 319 F.3d at 1150 n. 15. The California Court of Appeal in *Discover* held that "section 2 of the FAA, which mandates enforcement of arbitration agreements, preempts any otherwise applicable California judicial law finding class action waivers to be substantively unconscionable and invalid." *Discover,* 105 Cal.App.4th at 345, 129 Cal. Rptr.2d 393. Besides contradicting its own precedent, *see Szetela,* the *Discover* court's conclusion runs contrary to the plain text of § 2 of the FAA as well as established federal judicial precedent interpreting the section. Section 2 of the FAA provides that arbitration agreements are generally enforceable *"save upon such grounds as exist at law or in equity for the revocation of any contract."* 9 U.S.C. § 2 (emphasis added). The Supreme Court

### 4. Filing Fee

Under the terms of the arbitration agreement, to initiate a complaint against Circuit City, an employee must submit an "Arbitration Request Form with a required filing fee of $75 (made payable with a cashier's check or money order to Circuit City Stores, Inc.)." Under California law, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal.4th at 110–11, 99 Cal.Rptr.2d 745, 6 P.3d 669 (emphasis in original).

Though denominated a "filing fee," the employee-claimant must pay the required seventy-five dollars here directly to Circuit City, rather than to the arbitration service Circuit City identifies in the arbitration agreement. It thus appears that the employee is required to pay Circuit City for the privilege of bringing a complaint. While a true filing fee might be appropriate under *Armendariz*, the fee required by Circuit City is not the "*type* of expense that the employee would be required to bear" in federal court, and is therefore inappropriate under *Armendariz*. Moreover, by requiring employees to pay the fee to the very entity against which they seek redress, Circuit City may very well

deter employees from initiating complaints.

The seventy-five dollar fee poses an additional problem. In federal court, plaintiffs in all types of cases may be exempt from paying court fees upon a showing of indigence. *See* 28 U.S.C. § 1915(a)(1). Circuit City's arbitration agreement, however, makes no similar provision for waiver of the filing fee (or other fees and costs of arbitration). Without such a provision for waiver in cases of indigence, employees in that category might well find it prohibitively expensive to pay seventy-five dollars to file a complaint. For these reasons, the arbitration agreement's fee provision is manifestly one-sided.

We therefore find the fee provision substantively unconscionable.

### 5. Cost-splitting

We have previously rejected the Circuit City arbitration agreement's cost-splitting provision. *Adams III*, 279 F.3d at 894. In *Adams III*, we held that Circuit City's "fee allocation scheme alone would render an arbitration agreement unenforceable." *Id.* Although in that case we evaluated an older version of the arbitration agreement, the version we review here contains the same provision that "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award."[16] Moreover, the arbitration agreement provides that "the Arbi-

---

has emphasized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assoc.*, 517 U.S. at 687, 116 S.Ct. 1652.

We also note that our holding is in tension with *Lozano v. AT & T*, 216 F.Supp.2d 1071 (C.D.Cal.2002). The court in *Lozano* held, *inter alia*, that an arbitration clause prohibiting class actions was not substantively unconscionable, so long as the clause allows the arbitrator to provide for declaratory and injunctive relief under state consumer statutes and authorizes statutory damages on an indi-

vidual basis. *Id.* at 1076; *see also Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189, 1195 (S.D.Cal.2001) (rejecting plaintiff's argument that bar on class-wide arbitration was substantively unconscionable). We reject the reasoning in *Lozano* and *Arriaga* to the extent that it conflicts with our holding that an essentially unilateral bar on class-wide arbitration is substantively unconscionable.

16. The costs of arbitration, as defined by the arbitration agreement, include:

the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees

trator may require the Associate to pay Circuit City's share of the costs of arbitration and incidental costs" should Circuit City prevail at arbitration. Under Circuit City's arbitration agreement, even an employee who has succeeded on her claim against Circuit City could be held liable for her share of the costs of the arbitration, because the arbitrator's authority to require Circuit City to pay in such circumstances is discretionary. Furthermore, the Circuit City arbitration agreement provides that if an employee does not succeed on her claim, the arbitrator has the discretion to charge the employee for Circuit City's share of the arbitrator's services.

By itself, the fact that an employee could be held liable for Circuit City's share of the arbitration costs should she fail to vindicate employment-related claims renders this provision substantively unconscionable.[17] Combined with the fact that Circuit City's fee-splitting scheme would sanction charging even a successful litigant for her share of arbitration costs, this scheme blatantly offends basic principles of fairness. *See Ting,* 319 F.3d at 1151; *Armendariz,* 24 Cal.4th at 110–11, 99 Cal. Rptr.2d 745, 6 P.3d at 687–88. Because

Circuit City's cost-splitting provision is harsh and unfair to employees seeking to arbitrate legal claims we conclude that it is substantively unconscionable.[18]

6. Remedies

 In *Adams III,* we criticized the limitations on available remedies in Circuit City's arbitration agreement.[19] The arbitration agreement we evaluate in this case, as in *Adams III,* similarly "fails to provide for all the types of relief that would otherwise be available in court." *Adams III,* 279 F.3d at 895; *see also Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054, 1059 (11th Cir.1998) (holding unenforceable an arbitration agreement that limited remedies otherwise available in court).

The Circuit City arbitration agreement delimits what relief is available to employees who succeed in arbitration claims against Circuit City. The agreement grants the arbitrator the discretion to award (1) injunctive relief, including reinstatement; (2) one year of full or partial back pay, subject to reductions by interim earnings or public or private benefits re-

---

charged by the Arbitration Service, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held. Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

17. *Cf. Blair v. Scott Specialty Gases,* 283 F.3d 595, 605–06 (3d Cir.2002) (holding that an arbitration agreement "would undermine Congress's intent" in enacting civil rights statutes if it prevented "employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require[d] them to pay for a judge in court") (quotations omitted); *Cole,* 105 F.3d at 1484 (noting in the context of an arbitration agreement that the court was "unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case").

18. Although Circuit City has included provisions in the arbitration agreement limiting an employee's liability for fees, we again reject the provisions because "the default rule is that employees will share equally in the cost of arbitration. As a result, we cannot interpret the agreement to prohibit sharing costs, as the court did in *Cole,* 105 F.3d at 1485, or find the issue of fees too speculative, as in *Green Tree [Fin. Corp.–Alabama v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)]." *Adams III,* 279 F.3d at 895 n. 5.

19. *See Adams III,* 279 F.3d at 895; *see also Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 670–74 (6th Cir.2003) (en banc) (declining to enforce Circuit City's limitations on remedies available under its arbitration agreement).

ceived; (3) two years of front pay; (4) compensatory damages in accordance with applicable law; and (5) punitive damages up to $5000 or the equivalent of a claimant's monetary award (back pay plus front pay), whichever is greater. This provision is identical to the one we held substantively unconscionable in *Adams III. See Adams III*, 279 F.3d at 895; *accord Morrison*, 317 F.3d at 670–74. Because the remedies limitation improperly proscribes available statutory remedies,[20] we again conclude that it is substantively unconscionable.

### 7. Unilateral termination/modification

 Circuit City's arbitration agreement provides that "Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates." Circuit City, then, may modify or terminate any and all dispute resolution agreements with its employees unilaterally. Notably, the arbitration agreement affords no such power to employees. The United States Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (confirming that arbitration under the FAA is a matter of "consent, not coercion"). Although the agreement requires Circuit City to provide exiguous notice[21] to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement. By granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement.[22] Therefore, we conclude that the provision affording Circuit City the unilateral power to terminate or modify the contract is substantively unconscionable.[23]

20. The provision places limits on an employee's total damages, while federal law limits only the sum of punitive and certain compensatory damages, *see* 42 U.S.C. § 1981a; 42 U.S.C. § 2000e–5(g)(1), and contravenes federal law by limiting an employee's front-pay award to two years' salary. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848–54, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). The provision also improperly limits punitive damages awards. *See Morrison*, 317 F.3d at 672–73.

21. This "notice" consists of posting "a written notice by December 1 of each year at all Circuit City locations."

22. *Cf. Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir.2002) ("allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000) (holding illusory an arbitration contract in which employer reserved right to alter terms "without any obligation to notify, much less receive consent from" the employee); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir.1999) (criticizing similarly an arbitration agreement that only the employer could terminate or modify); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir.1997) (same).

23. Our holding with regard to the provision granting Circuit City the unilateral authority to modify or terminate the arbitration agreement does not collide with that of the Sixth Circuit in *Morrison*, 317 F.3d at 667–68. The court in *Morrison* held that Circuit City's ability to modify or terminate the arbitration agreement unilaterally did not, by itself, render the contract unenforceable. In this case, we hold that the provision is substantively

## C. Severance

■■■■ California law grants courts the discretion either "to sever an unconscionable provision or refuse to enforce the contract in its entirety." *Adams III*, 279 F.3d at 895; Cal. Civ.Code § 1670.5(a). In exercising this discretion, courts look to whether the "central purpose of the contract is tainted with illegality" or "the illegality is collateral to [its] main purpose." *Adams III*, 279 F.3d at 895 (quoting *Armendariz*, 24 Cal.4th at 124, 99 Cal. Rptr.2d 745, 6 P.3d at 696–97). Even though the 1998 arbitration agreement is a revised version of the agreement we held unconscionable in *Adams III*, it is nonetheless permeated with objectionable provisions. While many of the terms of Circuit City's arbitration agreement appear facially neutral, the effect of these provisions is to obstruct its employees' ability to substantiate claims against Circuit City. *See Ferguson*, 298 F.3d at 787 ("While many of its arbitration provisions appear 'equally applicable to both parties, [these provisions] work to curtail the employee's ability to substantiate any claim against [the employer].'") (quoting *Kinney*, 70 Cal.App.4th at 1332, 83 Cal.Rptr.2d 348).

■■■■ Circuit City correctly argues that the FAA articulates a strong public policy in favor of arbitration agreements. 9 U.S.C. § 2 (2002); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). Nevertheless, this "policy is manifestly undermined by provisions in arbitration clauses [that] seek to make the arbitration process itself an offensive weapon in one party's arsenal." *Kinney*, 70 Cal.App.4th at 1332, 83 Cal.Rptr.2d 348.

While it is within this court's discretion to sever unconscionable provisions, because an "insidious pattern"[24] exists in Circuit City's arbitration agreement "that functions as a thumb on Circuit City's side of the scale should an employment dispute ever arise between the company and one of its employees," we conclude that the agreement is wholly unenforceable. *Adams III*, 279 F.3d at 892. The adhesive nature of the contract and the provisions with respect to coverage of claims, the statute of limitations, class claims, the filing fee, cost-splitting, remedies, and Circuit City's unilateral power to terminate or modify the agreement combine to stack the deck unconscionably in favor of Circuit City. Any earnest attempt to ameliorate the unconscionable aspects of Circuit City's arbitration agreement would require this court to assume the role of contract author rather than interpreter. Because that would extend far beyond the province of this court we are compelled to find the entire contract unenforceable.[25] *See Ferguson*, 298 F.3d at 787–88; *Adams III*, 279 F.3d at 895–96; *Armendariz*, 24 Cal.4th at 124–27, 99 Cal.Rptr.2d 745, 6 P.3d at 697–98.

## CONCLUSION

Because the Circuit City arbitration agreement is unconscionable under California contract law, we affirm the district

---

unconscionable. We draw no conclusion as to whether this term, by itself, renders the contract unenforceable.

**24.** *Ferguson,* 298 F.3d at 787.

**25.** Because we find that numerous provisions in Circuit City's arbitration agreement are substantively unconscionable, we decline to sever particular terms from the agreement, as the Sixth Circuit did in *Morrison.*

court's denial of Circuit City's motion to compel arbitration.

AFFIRMED.