**Renee P. GEOFFROY and Alice Mack, Plaintiffs,**

v.

**WASHINGTON MUTUAL BANK, Defendant.**

**No. 06 CV 1732 BEN (WMC).**

United States District Court, S.D. California.

May 3, 2007.

Joshua B. Swigart, Hyde & Swigart, San Diego, CA, for Plaintiffs.

Edward J. McNamara, Barbara A. Potashnick, Office of The General Counsel, Washington Mutual Bank, Chatsworth, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY

BENITEZ, District Judge.

### I. INTRODUCTION

Plaintiffs are retirees who opened a joint consumer checking account at their local branch of Defendant Washington Mutual Bank. They deposited $80,000 in the account and went on a three-month vacation. Upon returning, they discovered the account had been drained dry and overdrawn by $20,000 by someone else. The bank took the position that it was not at fault and demanded repayment of the overdraft. Plaintiffs then brought the instant action alleging a federal claim under the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and state claims of negligence and breach of contract. Washington Mutual now moves to compel arbitration of the claims and to stay the action based upon an arbitration clause in its checking account "Signature Card." Plaintiffs oppose the motion arguing that the

arbitration clause is unconscionable. For the reasons stated below, the Court agrees with the Plaintiffs and denies Washington Mutual's Motion to Compel and Motion to Stay.

## II. LEGAL STANDARDS

### A. Validity of the Arbitration Clause is for the Court to Determine

 In its recent *en banc* decision in *Nagrampa v. Mailcoups, Inc.,* 469 F.3d 1257 (9th Cir.2006), the Ninth Circuit drafted a blueprint for federal district courts addressing the question of compelling arbitration where the arbitration agreement is attacked as unconscionable. Where the crux of the Complaint challenges the validity of the agreement containing the arbitration provision, the question of unconscionability must be referred to the arbitrator. *Id.* at 1264. However, when the plaintiff does not attack the validity of the contract as a whole, a federal court is to decide whether the arbitration provision is valid and enforceable under the Federal Arbitration Act ("FAA") (9 U.S.C. § 2). *Id.* "The federal courts cannot shirk their statutory obligation to do so simply because controlling substantive state law requires the court to consider, in the course of analyzing the validity of the arbitration provision, the circumstances surrounding the making of the entire agreement." *Id.*

In this case, Plaintiffs do not attack as a whole the validity of the checking account contract. Quite the opposite. Plaintiffs contend that the contract is otherwise valid and that Washington Mutual breached the contract and violated the EFTA. Therefore, as in *Nagrampa,* this Court is required to turn to California law to evaluate the unconscionability of the arbitration provision. *Id.* at 1264–65 ("Because § 2 of the FAA provides that arbitration agreements are generally valid and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract, we are required to turn to California law to address Nagrampa's arguments regarding the unconscionability of the arbitration provision.").

### B. California Law of Unconscionable Contract Provisions

#### 1. The Procedural / Substantive Sliding Scale

 *Nagrampa* observes that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable. *Id.* at 1280. California courts scrutinize contract provisions for both procedural and substantive unconscionability. *Id.* Under California law, procedural unconscionability and substantive unconscionability need not both be present to the same degree. *Id.* "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citations omitted).

#### 2. Procedural Unconscionability

 Procedural unconscionability analysis looks at "oppression or surprise." *Id.* "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* (citations omitted).

#### 3. Substantive Unconscionability

 Substantive unconscionability analysis considers whether an arbitration

provision is overly harsh or generates one-sided results. *Id.* The paramount issue is mutuality. *Id.* at 1281. "California law requires an arbitration agreement to have a 'modicum of bilaterality,' and arbitration provisions that are 'unfairly one-sided' are substantively unconscionable." *Id.* (citations omitted).

## III. FAA Provides Procedure for Determining Unconscionability Before Trial

 The initial inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive. *Id.* Before proceeding to analyze the Washington Mutual arbitration provision, a detour is in order. Both sides have submitted declarations in support of their positions on the arbitration clause. Neither side addresses the question of whether it is proper to consider matters outside the pleadings, whether allegations in the Complaint are presumed to be true, or the method by which the Court should resolve any material factual disputes. Additionally, the Plaintiffs have filed a verified Complaint, meaning each Plaintiff has individually filed an affidavit attesting to the truth of the factual allegations. With a verified Complaint, the facts set forth in the Complaint may be given the same weight as other declarations.

Although neither party mentions it, Section 4 of the FAA provides for a federal court to summarily determine the matter. If requested by party resisting arbitration, the court is authorized to conduct a limited jury trial. Section 4 states, *inter alia,* "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded ... the court shall hear and determine such issue." 9 U.S.C. § 4. Courts have employed a summary judgment approach for such hearings, ruling as a matter of law where

there are no genuine issues of material fact. *See e.g., Ferguson v. Countrywide Credit Industries, Inc.,* 2001 WL 867103 (C.D.Cal.2001), *aff'd,* 298 F.3d 778, 782 (9th Cir.2002); *Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 129–30 (2nd Cir. 1997), *cert. denied,* 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997) (under § 4 of the FAA, a party resisting arbitration and requesting a trial must submit evidence demonstrating a genuine issue of fact, as when opposing a motion for summary judgment); *Perceptics Corp. v. Societe Electronique et Systemes Trindel,* 907 F.Supp. 1139 (E.D.Tenn.1992). The Plaintiffs in this case have not demanded a jury trial on the arbitration issue. In the evidence presented, there are no genuine issues of material fact to be resolved. Only Plaintiffs have submitted declarations concerning the context in which the Signature Cards were signed. They are not inherently unbelievable and there is no evidence presented suggesting otherwise. The only declaration submitted by Washington Mutual is from a bank employee who was not present at the time Plaintiffs opened their accounts and whose testimony is limited to vouching for the accuracy of the photocopies of the Signature Card and the Account Disclosures. To the extent the bank employee declaration comments on the events that took place at the account opening, Plaintiffs object that the declarant has no personal knowledge. The objection is sustained. Both parties agree on the Signature Card signed by Plaintiffs. Consequently, the Court may proceed to determine the enforceability of the arbitration clause as a matter of law.

## IV. ANALYSIS OF THE ARBITRATION PROVISION

### A. The Opening of a Checking Account

The arbitration provision contained in the Washington Mutual account Signature

Card signed by the Plaintiffs, as a matter of law, is unconscionable and unenforceable. The arbitration provision is an adhesive agreement that is both procedurally and substantively unconscionable. The essential facts are as follows. Plaintiff Mack is age 65, retired, and receiving Social Security benefits. *See* Declaration of Alice Mack attached to Plaintiffs' Opposition to Defendant, Washington Mutual Bank's Motion to Compel Arbitration ("Mack Decl."), at ¶¶ 7, 14. Plaintiff Geoffroy is 59. *See* Declaration of Renee Geoffroy attached to Plaintiffs' Opposition to Defendant, Washington Mutual Bank's Motion to Compel Arbitration ("Geoffroy Decl."), at ¶¶ 8. Geoffroy inherited $80,000 and decided to open a checking account at Washington Mutual Bank. *Id.* at ¶ 3. Geoffroy and Mack spoke with a bank employee named Carolyn Lee[1] to open the account. *Id.* at ¶ 4.

According to Geoffroy and Mack, Lee asked to see identification cards. Lee then "came back and presented us with a document entitled Signature Card ... that had our personal information already typed on it." *Id.* at ¶ 6; Mack Decl. at ¶ 5. The bank employee, Lee, asked each Plaintiff to verify the correctness of the personal information on the top of the Signature Card and then to sign the bottom. Geoffroy Decl. at ¶ 6; Mack Decl. at ¶ 5. Both Geoffroy and Mack checked to ensure their names, addresses, dates of birth, and driver's license numbers were correct and then signed the Signature Card. Geoffroy Decl. at ¶ 7; Mack Decl. at ¶ 6. Both Plaintiffs had difficulty reading the personal information Lee had typed on the document because of the small font size. Geoffroy Decl. at ¶ 8; Mack Decl. at ¶ 7.

**B. The Form of the Signature Card**

The Court notes that the Signature Card is not actually a traditional bank signature card used only for recording a specimen of the account holders' signature, but a full-size 8½ × 11 inch form. The form has fill-in-the-box boxes for personal information in the top one-third of the page. The personal information is typed in all capital letters using an approximately 8–point font size surrounded by white space. The middle one-third of the form has several paragraphs of very small, dense print and an oblong box with very small, dense print titled "TAX CERTIFICATION." The print appears to be even smaller than the rest of the printing on the form, mostly in lower case letters, and smaller than 6–point font size. It has also suffered a degradation of quality, probably due to photocopying. The very last line of small type is in all capital letters and says: "THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THE DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING." The bottom third of the form has three boxes for signatures. One box has Geoffroy's name printed above and one box has Mack's name printed above. Inside both boxes are only dotted lines. Below both boxes are the words: "Please sign within the box." Beside both boxes are the words "Thumb print."

Paragraph one of the fine print on the form states, "The depositor shall be bound by the Bank's Account Disclosures and Regulations, and all amendments thereto, from time to time in effect." Paragraph four states, "Most disputes arising under this Agreement related to accounts or services hereunder are subject to mandatory

---

**1.** Defendant has not offered a declaration from Lee.

binding arbitration. Rights to trial by a judge or jury are waived hereby."

### C. The Signature Card is an Adhesion Contract and is Procedurally Unconscionable

Returning now to the initial inquiry in California's unconscionability analysis, *i.e.,* whether the arbitration agreement is adhesive, the Court finds this Washington Mutual arbitration clause to be adhesive. A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Nagrampa,* 469 F.3d at 1281 (citation omitted). "Both standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice." *Id.* (internal quotations and citations omitted). Here, the Signature Card arbitration provision was presented in such a way that the terms were not open to negotiation. Geoffroy states that, "I was never given the opportunity to negotiate the terms of the Signature Card.... I felt that if I did not agree to the terms of which Washington Mutual has set for the Platinum Account, I could not open the account." Geoffroy Decl. at ¶¶ 11, 13. Mack echoes Geoffroy's absence of meaningful choice. Mack Decl. at ¶¶ 10, 12. Plaintiffs were in a substantially weaker bargaining position than Washington Mutual Bank and Plaintiffs were presented with the arbitration provision, if they were aware of it at all, on a take-it-or-leave-it basis.

Washington Mutual argues, without evidence, that Plaintiffs had other choices for banking and that as a result, the contract was not adhesive. *Nagrampa,* however, notes that California has squarely rejected the notion that the availability in the marketplace of substitute services alone can defeat a claim of procedural unconscionability. *Nagrampa,* 469 F.3d at 1283. Moreover, the element of surprise, though not required for a finding of procedural unconscionability, was certainly present here. Bank signature cards have long been used by financial institutions when opening accounts for customers. The cards were traditionally small cards used simply for the purpose of maintaining a specimen of an account-holder's signature. They were not the forms used to set forth the terms of the account-holder/bank agreement. Thus, it is somewhat misleading to title the Washington Mutual document: "Signature Card," and Plaintiffs were obviously misled. Both Plaintiffs explain, "[w]hen I signed the Signature Card, I believed that the document would assist the bank in verifying our identification and signatures when and if someone was forging our names to get access to our account." Geoffroy Decl. at ¶ 10; *see also* Mack Decl. at ¶ 9. As mentioned earlier, the small dense prolix print on the Signature Card is difficult to read. The Washington Mutual Bank branch employee did nothing to draw the Plaintiffs' attention to the arbitration provision. Geoffroy explains, "Lee never explained to me that by signing the Signature Card, I would be waiving my rights to a trial." Geoffroy Decl. at ¶ 10; Mack Decl. at ¶ 9. To the contrary, the bank employee simply instructed the women to check the correctness of the personal information and then to sign the form. This is a much more oppressive case than the case of *Nagrampa.* Nagrampa had the contract with its arbitration clause for nearly two months before she signed it. *Nagrampa,* 469 F.3d at 1309 (Kozinski, J. dissenting) (two months ample time to read and digest contents of agreement). The Plaintiffs in this case opened the account in one visit. The documents in Nagrampa's case used

all capital letters on page one to draw attention to the arbitration agreement. *Id.* at 1310 (Kozinski, J. dissenting) ("You'd have to be blind to miss this warning. There was no surprise here."). The Plaintiffs in this case had difficulty reading even the larger text on the Signature Card, much less the very small degraded print concerning the arbitration of claims.

If Plaintiffs had taken extra time and sought advice on the Washington Mutual terms for opening a checking account, they would still be faced with an ambiguous adhesion contract form. Above the signature blocks is an oblong tax certification box. Inside the box is printed, "TAX CERTIFICATION—UNDER PENALTIES OF PERJURY I CERTIFY THAT: 1. The Tax ID number shown on this form is my correct Taxpayer identification Number...." Immediately below the box are two more statements. The first says that by signing below, the signer agrees to be bound by the terms of the "Master Agreement" and makes the tax certification set forth above. The second is the last printed line of fine print before the signature boxes and states in capital letters: "THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING." Thus, due to the draftsmanship of Washington Mutual, a customer's signature might signal either agreement to all of the pre-printed terms, or simply that the signer is making the required tax certification to avoid backup withholding. Moreover, the salient arbitration provision is ambiguous on its face as it uses the phrase, *"most disputes ... are subject to mandatory*

binding arbitration," without specifying which are and which are not.

■ The net result is that the element of surprise is great.[2] "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the printed terms." *A & M Produce Co. v. FMC Corporation,* 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (Cal.App.1982); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1171 (9th Cir. 2003) (same). Because the agreement was oppressive and the surprise was great, the procedural unconscionability element is weighty. Under California law, where the procedural unconscionability is great, the substantive unconscionability need only be small to render an arbitration provision unenforceable. *Nagrampa,* 469 F.3d at 1280.

### D. The Arbitration Provisions are also Substantively Unconscionable

■ In this case, there is also substantive unconscionability in the arbitration provision. Three elements of the arbitration agreement are substantively unfair: (1) the cost-splitting provision; (2) the unilateral termination/modification provision; and (3) the lack of mutuality.

The arbitration provision found in Washington Mutual's Account Disclosures states that, "[t]he costs of arbitration will be equally borne by you and the Bank unless the arbitrator's decision allocates costs differently." Because the cost-splitting arrangement forces a retail customer to pay for vindicating federal rights granted under EFTA (*see* 15 U.S.C. § 1693m), and because the provision permits even a successful claimant to be charged with her

**2.** Had Washington Mutual wanted to avoid the surprise it could have: (a) used large type for the arbitration clause; (b) set the arbitration clause on a separate document; (c) asked each plaintiff to initial the specific arbitration clause; (d) and specified the issues subject to arbitration and informed the customer about the actual costs of arbitration.

share of arbitration costs, "this scheme blatantly offends basic principles of fairness," and renders it substantively unconscionable. *Ingle,* 328 F.3d at 1178 (finding arbitration cost-splitting provision in employment contract substantively unconscionable).

Additionally, the arbitration provision fails because it permits Washington Mutual to unilaterally and without notice change the provisions. The Washington Mutual Account Disclosures state, "[t]he Bank may amend the Master Account Agreement, the account terms, and these Account Disclosures and Regulations, Statement of Fees, the Bank Rate Information Sheet and any other documents or agreements related thereto at any time without notice." By granting itself the sole authority to amend the arbitration provision without notice, compounded by the fact that this contract is adhesive in the first instance, the provision is rendered substantively unconscionable. *Id.* at 1179 (finding unilateral modification power in adhesive contract, even when notice of modification is required, rendered arbitration provision substantively unconscionable).

Finally, the arbitration provision lacks mutuality. The arbitration agreement reserves to Washington Mutual the right to offset its own claims against its account holder or to exercise a security interest in the property of its account holder, without resorting to arbitration. Under California law, "substantively unconscionability may manifest itself in the form of an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." *Nagrampa,* 469 F.3d at 1285–86 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000)). The lack of mutuality here also renders the agreement substantively unconscionable. Added the

three elements together, the arbitration provision at issue in this case lacks to a great degree substantive fairness.

### E. The Arbitration Provision is Unconscionable Under the Sliding Scale Approach

 Applying California's sliding scale test for unconscionability, this Court finds that the evidence of procedural unconscionability is strong and so is the element of substantive unconscionability. Taken together, the arbitration provision is clearly unconscionable, and as a result, unenforceable under § 2 of the FAA. *Nagrampa,* 469 F.3d at 1293; *Ingle,* 328 F.3d at 1180–81; *A & M Produce,* 135 Cal.App.3d at 493, 186 Cal.Rptr. 114 ("When nonnegotiable terms on preprinted form agreements combine with disparate bargaining power, resulting in the allocation of commercial risks in a socially or economically unreasonable manner, the concept of unconscionability ... furnishes legal justification for refusing enforcement of the offensive result.").

### V. CONCLUSION

Therefore, Washington Mutual's Motion to Compel Arbitration is hereby, Denied. Furthermore, the Motion to Stay Pending Arbitration is hereby, Denied as moot. Counsel are directed to contact the Magistrate Judge within five (5) court days to schedule an Early Neutral Evaluation Conference and Case Management Conference, as appropriate.